[No. 8970–3–III.   Division Three.   December 8, 1988.]

MARY ROSE NICHOLSON, *Appellant*, v. E. FRED DEAL, ET AL, *Respondents*.

*Steven Aycock,* for appellant.

*Theodore Roy* and *Roy & Pell,* for respondents.

THOMPSON, C.J.—Mary Rose Nicholson appeals a summary judgment dismissing her medical malpractice action against Dr. E. Fred Deal and Dr. Edward Farrar. The primary issue is whether the defendant doctors' affidavits satisfy their burden to show the absence of any issue of material fact. We hold they do not and reverse the summary judgment.

Ms. Nicholson was 34 years old in 1983 when she consulted Dr. Bruce Ham about pain in her right hip. X–rays showed "a complete loss of the femoral head with significant osteoarthritic changes in the joint." Dr. Ham referred Ms. Nicholson to Dr. E. Fred Deal, an orthopedic surgeon. Dr. Deal recommended a total hip replacement. He performed this surgery on Ms. Nicholson in November 1983, with Dr. Edward Farrar assisting.

Ms. Nicholson returned to Dr. Ham in November and December 1983, complaining of pain and that her right leg was now longer than the left. Dr. Ham ordered x–rays, which he sent to Dr. Deal. On January 4, 1984, Dr. Deal wrote Dr. Ham:

> We have reviewed your notes on Mary Nicholson, and also the x–rays. The general position of these components is very good with *more methyl methacrylate along the medial margin of the pelvic brim than I would like, but it certainly should not really pose a problem.* She had enough shortening of that leg that we did attempt to stretch it, and I am sure that is a major portion of her pain.

(Italics ours.) Methylmethacrylate is the adhesive used to cement the prosthesis to the hip bone during total hip replacement surgery.

In early 1984, Ms. Nicholson returned to Dr. Ham's office, complaining of pain. As he had before, Dr. Ham ordered x–rays and sent them to Dr. Deal. Ms. Nicholson again consulted Dr. Ham about her pain on May 24, 1984;

this time, Dr. Ham scheduled an appointment for her with Dr. Deal.

On June 8, 1984, Dr. Deal wrote Dr. Ham that he had examined Ms. Nicholson, that her leg length discrepancy was minimal, and that he was "pleased with her hip position, and she should be able to return to full activities very soon." This letter did not mention Ms. Nicholson's complaints of pain in her leg.

Over the next year, Ms. Nicholson consulted several doctors, but none of them could help her. Then on May 23, 1985, Ms. Nicholson visited Bill Robertson, a physician's assistant at the Colville Indian Health Center in Nespelem. She told him she had pain in her right hip and knee and pain during sexual intercourse. During an exam, Mr. Robertson found that by pressing on the right side of the vaginal wall, he reproduced the symptoms in her leg. He took x–rays and referred her back to Dr. Ham.

Dr. Ham reviewed the x–rays and noted they showed "significant methylmethacrylate on the inner aspect of the pelvis". He also performed a vaginal exam, during which he could feel the methylmethacrylate which was "firm and rock–hard". He diagnosed the pain as related to the methylmethacrylate. Dr. Ham advised Dr. Deal of his findings. Dr. Deal replied:

> We have had an occasional extravasation of methyl methacrylate medially, and it appears that this one went right through the cement restricter cup that we utilized. At any rate, I have really not seen a problem under the illacus from the methyl methacrylate, but I do believe that that probably is the problem in this case, and that it probably should be excised.

On July 31, 1985, Dr. Ham surgically removed Ms. Nicholson's excess methylmethacrylate.

In November 1986, Ms. Nicholson filed this action for damages for personal injury against Drs. Deal and Farrar. She alleged they had failed to exercise the degree of care, skill and competence ordinarily possessed and exercised under similar circumstances by a physician treating his

patient. Specifically, she stated they had breached their duty to:

(a) Advise Plaintiff of the possibility of improper application of methyl methacrylate.

(b) Advise Plaintiff of the possibility of improper insertion or failure of cement restricter cups [used to prevent the methyl methacrylate from moving into other portions of the body].

(c) Properly insert the cement restricter cup.

(d) Properly apply the methyl methacrylate.

(e) Warn Plaintiff that the methyl methacrylate might not be or was not properly applied.

(f) Advise the Plaintiff of the possibility of extravasation of the methyl methacrylate and associated problems that may accompany that.

(g) Advise Plaintiff to proceed to have the extravasated methyl methacrylate removed at the earliest opportunity.

(h) To remove the extravasated methyl methacrylate at the earliest possibility.

(i) Advise Plaintiff of the possibility of differences in the length of her legs after surgery.

Each defendant doctor filed a motion and affidavit seeking summary judgment. In his affidavit Dr. Deal stated:

Affiant is . . . [b]oard certified . . . and familiar with the standard of practice of a reasonable prudent orthopedic surgeon practicing within . . . Washington.

. . . Pursuant to standard practice, methylmethacrylate, cementing material used to cement a cup in the acetabulum or hip bone. [*Sic.*] That in doing so the cementing material frequently is extruded through the hip bone and is not considered to be inappropriate.

Mrs. Nicholson's recovery from the hip pro[s]thesis surgery has been uneventful and satisfactory.

Affiant . . . at all times acted as a reasonable, prudent physician practicing the specialty of orthopedic surgery within the State of Washington.

In his affidavit, Dr. Farrar in substance stated he was familiar with the standard of practice and that in his opinion both he and Dr. Deal met that standard.

In response, Ms. Nicholson moved to strike the doctors' affidavits on the ground they did not set forth facts but

instead offered self–serving conclusions. She also submitted her own affidavit as well as the affidavits of Dr. Ham, Bill Robertson, and Dr. George Grable, the radiologist who read the x–rays ordered by Bill Robertson and those taken prior to the surgery to remove the methylmethacrylate.

These affidavits outline Ms. Nicholson's visits to various health professionals from 1983 through 1985, as set forth above. Dr. Ham and Dr. Grable also attest to the presence of what they describe as a "significant" and "moderately large" amount of methylmethacrylate in the right side of Ms. Nicholson's pelvis. But they do not comment on whether Dr. Deal's and Dr. Farrar's treatment of Ms. Nicholson met the applicable standard.

On this record, the trial court granted each doctor's motion for summary judgment, but deferred entry of the order to allow Ms. Nicholson time to secure and file the affidavit of an expert to rebut the doctors' affidavits. When Ms. Nicholson failed to secure such an affidavit, the court, on October 5, 1987, entered a summary judgment order.

On October 15, Ms. Nicholson moved for reconsideration, citing *Hash v. Children's Orthopedic Hosp. & Med. Ctr.,* 49 Wn. App. 130, 741 P.2d 584 (1987).[1] The court distinguished *Hash* on its facts and denied the motion.

Ms. Nicholson contends the defendant doctors' affidavits are conclusory and contain unsupported statements. Thus, she argues the affidavits, like those of the hospital in *Hash,* do not satisfy the defendants' burden of showing that there is no issue of material fact.

Under CR 56(c), a motion for summary judgment is granted only

if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

---

[1]The Supreme Court accepted review of *Hash,* 110 Wn.2d 1001 (1988), and affirmed the decision of the Court of Appeals. *Hash v. Children's Orthopedic Hosp. & Med. Ctr.,* 110 Wn.2d 912, 757 P.2d 507 (1988).

"A material fact is one upon which the outcome of the litigation depends, in whole or in part." *Barrie v. Hosts of Am., Inc.,* 94 Wn.2d 640, 642, 618 P.2d 96 (1980). The party moving for summary judgment bears the burden of showing that there is no issue of material fact; the court must resolve all reasonable inferences against the moving party, and will grant the motion only if reasonable people could reach but one conclusion. *Detweiler v. J.C. Penney Cas. Ins. Co.,* 110 Wn.2d 99, 108, 751 P.2d 282 (1988).

If the moving party does not sustain its burden, the court shall not grant summary judgment, regardless of whether the nonmoving party has submitted affidavits or other evidence in opposition to the motion. *Graves v. P.J. Taggares Co.,* 94 Wn.2d 298, 302, 616 P.2d 1223 (1980). The burden shifts to the nonmoving party to set forth facts showing that there is a genuine issue of material fact only after the moving party has met its burden of producing factual evidence[2] showing that it is entitled to judgment as a matter of law. *Graves,* at 302.

*Hash* concerned a negligence action brought by a 6–year–old girl who had suffered a fracture during physical therapy at the hospital. The hospital moved for summary judgment, relying upon the affidavits of Dr. Carroll Wallace, a rheumatologist. Dr. Wallace attested the plaintiff had juvenile rheumatoid arthritis; patients such as the plaintiff have weaker bones than normal due to demineralization; a vigorous and intensive physical therapy is the treatment of choice for this condition; and such treatment conforms to

---

[2]CR 56(e) provides:

"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such *facts* as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. . . . When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." (Italics ours.)

the standard of care of a reasonably prudent rheumatologist. She further stated the physical therapy program administered to the plaintiff met the standard of care. In the second affidavit, she noted that it is possible to fracture a bone when the therapist is not negligent.

The Supreme Court rejected these affidavits, and affirmed the Court of Appeals decision, reasoning:

> The court had no evidence from which to determine how the fracture occurred. *At the very least, to support a motion for summary judgment the moving party is required to set out its version of the facts and allege that there is no genuine issue as to the facts as set out.* In this case, those facts should have included an account of the circumstances surrounding Hash's injury from the only adult witness to the injury, the physical therapist who had been treating her at the time. We find it impossible to uphold a ruling that there is no genuine issue as to any material fact when the record contains all questions and no facts.

(Italics ours.) *Hash v. Children's Orthopedic Hosp. & Med. Ctr.,* 110 Wn.2d 912, 916, 757 P.2d 507 (1988).

The doctors attempt to distinguish *Hash.* They argue that Dr. Deal's affidavit offers a factual basis for his opinion that their conduct met the applicable standard of care, *i.e.,* he states that methylmethacrylate "frequently is extruded through the hip bone and is not considered to be inappropriate". However, we are not persuaded that Dr. Deal's statement is any different from the expert's statement in *Hash* that bones may be broken without a physical therapist being negligent. Both statements are general in nature. Neither set of affidavits describe the facts surrounding the alleged injury. Like the court in *Hash,* we are left with questions instead of facts. Did the doctors use too much methylmethacrylate, did they apply it improperly, or did they place the cement restricter caps incorrectly? When viewed in the light most favorable to Ms. Nicholson, the nonmoving party, this record does not allow us to uphold the trial court's ruling that there is no genuine issue of material fact.

At trial Ms. Nicholson will have to present evidence that the doctor's conduct did not meet the applicable standard of care. But we conclude *Hash* does not require her to do so upon the doctors' motion for summary judgment unless the doctors first present something more than conclusory statements. *See also Sea Farms, Inc. v. Foster & Marshall Realty, Inc.,* 42 Wn. App. 308, 310, 711 P.2d 1049 (1985), *review denied,* 105 Wn.2d 1010 (1986).

Moreover, Ms. Nicholson complained, not only of negligent treatment, but also that the doctors failed to obtain her informed consent to the surgery. A doctor's liability for failure to obtain informed consent "is founded, not on violation of a standard of care among the medical community, but on failure to disclose material information to a patient".[3] *Crawford v. Wojnas,* 51 Wn. App. 781, 783, 754 P.2d 1302, *review denied,* 111 Wn.2d 1027 (1988) (citing *Smith v. Shannon,* 100 Wn.2d 26, 30, 666 P.2d 351 (1983); *Miller v. Kennedy,* 11 Wn. App. 272, 285–86, 522 P.2d 852 (1974), *aff'd per curiam,* 85 Wn.2d 151, 530 P.2d 334 (1975)). Here, the doctors' affidavits do not address at all the allegations regarding their failure to advise Ms. Nicholson of the possibility of improper application of the methylmethacrylate and related problems. Thus, the affidavits clearly do not satisfy the doctors' burden as the

---

[3]RCW 7.70.050 provides:

"(1) The following shall be necessary elements of proof that injury resulted from health care in a civil negligence case or arbitration involving the issue of the alleged breach of the duty to secure an informed consent by a patient or his representatives against a health care provider:

"(a) That the health care provider failed to inform the patient of a material fact or facts relating to the treatment;

"(b) That the patient consented to the treatment without being aware of or fully informed of such material fact or facts;

"(c) That a *reasonably prudent patient under similar circumstances* would not have consented to the treatment if informed of such material fact or facts;

"(d) That the treatment in question proximately caused injury to the patient.

"(2) Under the provisions of this section a fact is defined as or considered to be a material fact, *if a reasonably prudent person in the position of the patient* or his representative would attach significance to it deciding whether or not to submit to the proposed treatment." (Italics ours.)

moving parties to establish the absence of an issue of material fact. *See Detweiler.*

Our holding makes it unnecessary for us to address the remaining issues raised by Ms. Nicholson.

The judgment of the Superior Court is reversed.

GREEN and MUNSON, JJ., concur.