[No. 9102-3-III. Division Three. April 25, 1989.]

William Burnet, et al, *Individually and as Guardians, Appellants,* v. Spokane Ambulance, et al, *Defendants,* Sacred Heart Medical Center, et al, *Respondents.*

*Marcia Meade* and *Dawson & Meade,* for appellants.

*David Goicoechea, Frank Johnson,* and *MacGillivray & Jones*; *Curtis Shoemaker, John Riseborough, Michael L. Wolfe,* and *Paine, Hamblen, Coffin & Brooke,* for respondents.

SHIELDS, J.—William and Elene S. Burnet, individually and as guardians for their minor child Tristen, brought a medical malpractice action for damages sustained by Tristen. The amended complaint alleged eight different causes of action against numerous defendants, including Sacred Heart Medical Center and Dr. Jeffrey Graham. In response to motions for summary judgment filed by Sacred Heart and Dr. Graham, the trial court dismissed claims arising out of breach of contract, Consumer Protection Act (CPA) violations, and informed consent. The Burnets appeal, arguing the court erred in dismissing the CPA and informed consent claims. We affirm.

Tristen suffered from a seizure disorder, which required numerous hospitalizations. Dr. Graham was her attending neurologist from June 22, 1983, until the events occurred which resulted in this action.

On December 9, 1983, as a result of a prolonged seizure, Tristen suffered neurological damage and lost some of her

previous abilities. She had begun to recover from that episode when she had a prolonged seizure on September 28, 1985. On October 2, 1985, while still hospitalized at Sacred Heart, she developed cerebral edema and suffered additional, extensive brain damage from which she has not recovered. This action followed.

The first issue is whether the trial court erred in granting the motions for summary judgment when neither Dr. Graham nor Sacred Heart submitted affidavits supporting their position.

The Burnets, citing *Hash v. Children's Orthopedic Hosp. & Med. Ctr.,* 110 Wn.2d 912, 915, 757 P.2d 507 (1988), maintain summary judgment was improper because neither Sacred Heart nor Dr. Graham submitted supporting affidavits with their motions. They further contend Dr. Graham bears the burden of proving there is no issue of fact under *Hartley v. State,* 103 Wn.2d 768, 774, 698 P.2d 77 (1985).

In *Hash* the court considered whether a summary judgment may properly be granted to be a defendant in a personal injury action, absent any statement of that party's version of the facts surrounding the injury. The court stated, at pages 915–16:

> In reviewing a summary judgment, an appellate court must review material submitted for and against a motion for summary judgment in the light most favorable to the nonmoving party. *Reese v. Sears, Roebuck & Co.,* 107 Wn.2d 563, 567, 731 P.2d 497 (1987). Therefore, this court must review the record as it existed before the trial court in the light most favorable to Hash. The record before the trial court showed only that Hash, a 6–year-old girl, suffered a fracture of the left femur during physical therapy. The court had no evidence from which to determine how the fracture occurred. At the very least, to support a motion for summary judgment the moving party is required to set out its version of the facts and allege that there is no genuine issue as to the facts as set out. In this case, those facts should have included an account of the circumstances surrounding Hash's injury from the only adult witness to the injury, the physical therapist who had been treating her at the time. We find

it impossible to uphold a ruling that there is no genuine issue as to any material fact when the record contains all questions and no facts.

In *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 91 L. Ed. 2d 265, 274, 106 S. Ct. 2548 (1986), the Court held there is no requirement under Fed. R. Civ. P. 56 that the moving party support its motion with affidavits or other material *negating* the opponent's claim. *Celotex,* at first glance, conflicts with *Hash.* However, if one assumes the truth of the facts which constitute the negligence claim asserted in *Hash,* that claim cannot be defeated by a simple conclusory statement negligence did not occur. *See also Baldwin v. Sisters of Providence in Wash., Inc.,* 112 Wn.2d 127, 132, 769 P.2d 298 (1989); *Nicholson v. Deal,* 52 Wn. App. 814, 821, 764 P.2d 1007 (1988). *Baldwin, Hash* and *Nicholson* reviewed summary judgments on a factual analysis. A summary judgment motion may, however, be reviewed under either a factual or a legal analysis or both. *Hartley,* at 774–75. Here, Sacred Heart and Dr. Graham made their motions without supporting affidavits.[1] Both Sacred Heart and Dr. Graham argue, even assuming the truth of the Burnets' allegations and supporting documents, the Burnets have, as a matter of law, failed to state a claim for violation of the CPA and the informed consent law. *See Peterick v. State,* 22 Wn. App. 163, 179–80, 589 P.2d 250 (1977), *overruled on other grounds in Stenberg v. Pacific Power & Light Co.,* 104 Wn.2d 710, 719, 709 P.2d 793 (1985) (when State did not file affidavits but chose to rely on its pleadings and plaintiff's admissions, summary judgment is properly granted.) Assuming the truth of the Burnets' version of the facts, they have failed as a matter of law to state a cause of action; therefore, controverting factual affidavits were not necessary and summary judgment is appropriate as a matter of law. We find no error.

---

[1] It is important to note the issue of negligence is not before us. Dr. Graham did identify three interrogatory answers but argued these in relation to the negligence action, which is not an issue in this appeal.

Next, did the trial court err in dismissing the Burnets' CPA claim for damages against Sacred Heart and Dr. Graham?

The Burnets contend they presented a question of fact regarding Dr. Graham's asserted "deceptive practice" of holding himself out as a pediatric neurologist when he was not board certified. They rely on the advertisement in the telephone book and construe it to be a purposeful solicitation of pediatric neurology patients for entrepreneurial purposes, citing *Quimby v. Fine,* 45 Wn. App. 175, 724 P.2d 403 (1986), *review denied,* 107 Wn.2d 1032 (1987). They further claim the CPA also applies to Sacred Heart, because it allowed Dr. Graham hospital privileges as a pediatric neurologist even though he was not board certified to provide that type of care.

In *Jaramillo v. Morris,* 50 Wn. App. 822, 750 P.2d 1301, *review denied,* 110 Wn.2d 1040 (1988), the plaintiff claimed the hospital and podiatrist were negligent in allowing or performing surgery on the plaintiff's ankle because a podiatrist is limited by licensing statutes to surgery on the foot. *Jaramillo,* at 826–27, addressed whether plaintiffs had stated a cause of action for violation of the CPA:

> An individual may sue under the CPA, RCW 19.86.090, if: (1) the conduct in question is unfair or consists of deceptive acts; (2) in the sphere of trade or commerce; (3) the conduct impacts the public interest; and (4) causes the plaintiff injury to business or property. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,* 105 Wn.2d 778, 785–91, 719 P.2d 531 (1986). With regard to the "learned professions", such as law or medicine, the question is whether the claim involves entrepreneurial aspects of the practice; mere claims of professional negligence or malpractice are exempt. *Haberman v. WPPSS,* 109 Wn.2d 107, 169, 744 P.2d 1032 (1987); *Short v. Demopolis,* 103 Wn.2d 52, 61, 691 P.2d 163 (1984); *Quimby v. Fine,* 45 Wn. App. 175, 180, 724 P.2d 403 (1986), *review denied,* 107 Wn.2d 1032 (1987). In *Quimby,* a plaintiff's professional negligence claim against a doctor was held outside the scope of the CPA.

The court held claims which relate to the competence and performance of the profession do not fall within the sphere of trade or commerce and are thus exempt from the CPA.

Here, the Jaramillos' claims against the hospital concern its alleged negligence in not determining Dr. Morris' qualifications to perform ankle surgery and, if the ankle surgery is not within his podiatry license, negligence in not determining that fact. Also, there was a claim the hospital negligently supervised the operation by failing to provide a staff surgeon to oversee Dr. Morris' surgery. The entrepreneurial aspects of the hospital's business, such as billing, were not implicated. The standard of care applied to doctors, podiatrists, and hospitals is contained in RCW 4.24.290, *i.e.*, "that degree of skill, care, and learning possessed at that time by other persons in the same profession . . ." We see no reason to distinguish here between claims against doctors or hospitals for failure to meet that standard. Thus, we hold the Jaramillos' negligence claims against Sunnyside Hospital are not properly cognizable under the CPA.

(Footnote omitted.)

The same rationale is applicable here. Neither claim asserted by the Burnets against Sacred Heart involves the entrepreneurial aspect of the hospital's operation, so they fall outside the scope of the CPA. This would include the assertion Sacred Heart allowed Dr. Graham hospital privileges in order to draw a large clientele.

With respect to Dr. Graham, the Burnets have failed to show board certification is required by Washington law and have failed to show a board certified neurologist is any more qualified than a certified pediatrician who has completed additional study in neurology. There is no evidence Dr. Graham held himself out as board certified nor that the Burnets relied on that qualification when choosing him as Tristen's physician. Finally, there is nothing in their argument which relates to Dr. Graham's entrepreneurial practices. Their claim encompasses negligence only. Thus, the CPA action against him was properly dismissed.

The final issue is whether the Burnets established a question of fact with respect to violation of the informed consent law.

The Burnets allege Dr. Graham had a duty to inform them of his decision not to provide any diagnostic tests or treatment. They further allege his failure to do so presented a factual issue which precluded summary judgment. Additionally, they argue Sacred Heart was required to secure informed consent because of extraordinary circumstances: Tristen was being cared for by a pediatric neurologist who was not board certified.

 Informed consent focuses on the patient's right to know his bodily condition and to decide what should be done. RCW 7.70.050; *Alexander v. Gonzer,* 42 Wn. App. 234, 237, 711 P.2d 347 (1985) (citing *Keogan v. Holy Family Hosp.,* 95 Wn.2d 306, 314, 622 P.2d 1246 (1980)), *review denied,* 105 Wn.2d 1017 (1986). Whenever a physician *becomes aware* of a condition which indicates risk to the patient's health, he has a duty to disclose it. *Keogan,* at 314; *Gates v. Jensen,* 92 Wn.2d 246, 251, 595 P.2d 919 (1979); *Alexander,* at 237; *Miller v. Kennedy,* 11 Wn. App. 272, 282, 522 P.2d 852 (1974), *aff'd,* 85 Wn.2d 151, 530 P.2d 334 (1975).

In response to Dr. Graham's liability, Thomas T. Reiley, M.D., an expert called on behalf of the Burnets, stated Dr. Graham was unaware of the risk of brain herniation and subsequent injury.[2] The trial court determined that the

---

[2]Dr. Reiley stated in his affidavit:

"6. After reviewing the medical records of Tristen L. Burnet, it is my opinion that the standard of care for a reasonably prudent physician was breached.

"7. Among other things, in the setting of neurologic signs and symptoms of unclear etiology a timely systematic exclusion of potentially harmful causes was neither suggested nor carried out.

"8. The standard of care was breached specifically when timely diagnostic tests were neither suggested nor carried out to rule out cerebral edema and the potential for brain herniation. The standard of care was breached in that timely steps were not taken to mitigate or prevent subsequent brain damage due to the combined effects of cerebral edema.

"9. Tristen L. Burnet received injuries as a direct and proximate result of the breach of the standard of care."

issues presented were confined to negligence and misdiagnosis rather than a violation of the informed consent law. We agree; informed consent is an alternative method to impose liability. Thus, a high risk method of treatment rendered in a nonnegligent manner, but without an informed consent of the patient, may result in liability. That is not the situation here. It is undisputed Dr. Graham was unaware of Tristen's condition which implicated risk to her, so he had no duty to disclose. *See Nicholson,* at 821. The Burnets' claim relates solely to issues of failure to meet the standard of care and diagnosis.

■ With respect to Sacred Heart, RCW 7.70 does not impose upon the hospital the same duties as those imposed upon a physician:

> To hold a hospital or its employees have a duty to intervene in the independent physician/patient relationship, unless the hospital is aware of circumstances more extraordinary than those in the record before this court, would be far more disruptive than beneficial to a patient.

*Alexander,* at 239. A hospital may be held vicariously liable if an employee physician fails to obtain consent. *See Cooper v. Curry,* 92 N.M. 417, 589 P.2d 201, 204 (Ct. App. 1978). However, there is no evidence Dr. Graham was an employee of Sacred Heart, only that he had staff privileges. Such a relationship does not impose vicarious liability. *Cooper,* 589 P.2d at 203. The Burnets' response to interrogatory 61 is also informative on the issue:

> Interrogatory No. 61: Please state precisely all information received by plaintiffs prior to the care given by Dr. Jeffrey Graham, setting forth the name of any person

---

Additionally, he stated in a second affidavit:

"4. It is my opinion, based on a more probable than not basis, that during the September 29, 1985, hospitalization of Tristen L. Burnet there was a material risk of brain herniation and subsequent injury or death as a possible explanation for the abnormal movements that were evident at the height of her sickness. *However, the material risk was not recognized by the attending physician.* The material risk that Tristen L. Burnet faced in experiencing cerebral edema and brain herniation also included the potential for subsequent neurological injury." (Italics ours.)

who delivered any such information to plaintiffs, any witnesses who were present during the receipt of any such information; the date of the same and the precise nature of the information provided and the manner in which plaintiff's [*sic*] contend it was inadequate for proper informed consent.

Answer: No one. Dr. Graham was who we depended and relied upon. He said he was a pediatric neurologist.

Thus, Sacred Heart had no duty to inform in light of the physician/patient relationship. We find no error.

Sacred Heart has asked for an award of attorney fees. However, it has failed to cite any applicable law which would allow us to make such an award. Therefore, attorney fees are denied. RAP 18.1.

The summary judgment order is affirmed.

MUNSON, A.C.J., and GREEN, J., concur.

Review denied at 113 Wn.2d 1005 (1989).