IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| TABRINA McBRIDE, | ) | No. 31710-2-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| THOMAS WEILER, D.D.S., and | ) | |
| ASSOCIATED DENTISTS, | ) | |
| | ) | |
| Appellants. | ) | |

LAWRENCE-BERREY, J. — In this dental malpractice action, Tabrina McBride

brought suit against Dr. Thomas Weiler, D.D.S., and his practice, Associated Dentists

(collectively Dr. Weiler) for negligence in performing a root canal in 2006 and for failure

to obtain informed consent. The jury found in favor of Dr. Weiler. The trial court then

granted Ms. McBride's request for a new trial, concluding there was no reasonable

inference from the evidence to justify the jury's verdict on the informed consent claim.

Dr. Weiler appeals, contending the court erred in concluding the jury's verdict on

informed consent was not supported by the evidence, and the court erred in finding the

jury was "likely confused." Because the jury's verdict on informed consent was

supported by the evidence, we reverse.

## FACTS

In March 2005, Ms. McBride went to Dr. Weiler for tooth sensitivity in tooth number 7, located in the upper front area of her mouth. The sensitivity continued into March 2006 when it was decided Ms. McBride needed a root canal. At the time, Dr. Weiler did not inform Ms. McBride about the risk of a file breaking during the procedure because it was "extremely rare." Report of Proceedings (RP) (Weiler) at 113.

Dr. Weiler began the root canal procedure by opening and broaching the tooth. "Broach" means to clean out the necrotic or bad tissue. Because broaching does not remove all of the material, a chemical is used to mummify and sterilize the canal. The next step is to shape the canal. Dr. Weiler first used a small file to establish the length of the canal. An x-ray showed Dr. Weiler's hand file at the end of the canal, confirming the working length of the tooth. The hand tool also provided him an audible warning that he was nearing the end of the canal. And, the measurements on his file showed he was at the appropriate depth.

After Dr. Weiler established the proper length of the canal, he proceeded to clean the canal, shape it, and get it ready for final filing. During the final filing, when the file was all the way to the end of his working length, the file broke at the shank.

2

After the file broke, Dr. Weiler took an x-ray and, based on his reading of the image, he confirmed that the end of the broken file was at the end of the canal, thus, filling the canal. This space would normally be filled with a rubber material, but Dr. Weiler told Ms. McBride that when he was in dental school, metal was used to fill the canal.

Dr. Weiler showed Ms. McBride the x-ray of the broken file and told her he was confident that because it had broken off at the bottom of the canal and the canal was free of bacteria, there was no risk presented by leaving the broken file in the canal. He informed Ms. McBride, however, that if she wanted the file removed she would need to see a specialist and that there would be risks associated with the removal. Dr. Weiler did not inform Ms. McBride of the risks of leaving the file in because he did not believe there were any risks. He also did not inform her to watch for infection.

Dr. Weiler crowned the tooth and instructed Ms. McBride that if "she had troubles" he "was there and she needed to call." RP (Weiler) at 68. He did not hear back from her.

In June 2008, Ms. McBride went to the emergency room with tooth pain and soft tissue swelling around tooth number 7. It was determined she had an abscess under the tooth and that the file needed to be removed. After several appointments with specialists,

the file was removed but the specialists could not save the tooth.

Ms. McBride filed a dental negligence and lack of informed consent complaint against Dr. Weiler.

During trial, Dr. Roderick Tataryn, an endodontist (dentist who specializes in root canals), was called as an expert witness by Dr. Weiler. He testified if Ms. McBride had come to him about the file being broken off, he also would have advised leaving it in place, but to report back if she had any symptoms. Dr. Tataryn also testified that based on peer review journals, if a file breaks and is left in the canal, the broken file does not reduce the chance of a successful root canal. He, however, testified if a file broke off and the tooth canal is not "cleaned and disinfected" then it is "a more difficult problem." RP (Tataryn) at 67.

Dr. Jay Grossman, Ms. McBride's expert, testified that if a file is put all the way to the apex of the tooth and all bacteria is removed, it could be a "perfectly good seal and an acceptable root canal." RP (Grossman) at 55. He, however, testified that in his opinion Dr. Weiler was 4 millimeters short of the apex of the tooth based on his reading of the x-rays. Dr. Grossman further opined, "A patient must be educated on [an] abscess." RP (Grossman) at 84.

4

Dr. Weiler's expert, Dr. Tataryn, had a different opinion regarding the placement of the file. He testified:

Q       [Looking at an x-ray] where would you say the end of that working file is relative to the end of the canal in that tooth?

A       Well, it's right at the end of the natural canal exactly at the radiographic apex, maybe within a tenth of a millimeter short of the radiographic apex. It's really a perfect working-length file for that particular tooth.

Q       [Looking at another x-ray] What do you see there?

A       That is a separated nickel titanium file. You can tell it's nickel titanium by the shape and the density, and it is separated off. It's broken right at the same exact apical extent of his previous working-length file. So he's basically separated off a nickel titanium file to the radiographic apex of the tooth.

Q       Now, Doctor, there's been some testimony from other witnesses in this case that the end of that broken file or separated file that you see on image—

. . . .

Q       —is four to five millimeters from the end of the canal. Do you agree with that?

A       I disagree with that.

RP (Tataryn) at 15-16.

The jury found in favor of Dr. Weiler and rejected Ms. McBride's argument, finding Dr. Weiler was not negligent and did not fail to secure Ms. McBride's informed consent. Ms. McBride requested a new trial on the failure to secure the informed consent claim. The court granted her request, entering findings of fact and conclusions of law. The court found the jury was "likely confused" by the separate claims of negligence and

lack of informed consent. Clerk's Papers (CP) at 242. The court then concluded, "There was no reasonable inference from the evidence to justify the jury verdict on the informed consent claim absent any evidence of communication of risk and options beyond the file breaking and [Dr. Weiler's] comfort level in leaving it in." CP at 243. This appeal followed.

## ANALYSIS

*Granting Motion for New Trial.* The issue before this court is whether the trial court abused its discretion in granting Ms. McBride's motion for a new trial. Dr. Weiler contends the court abused its discretion by concluding sufficient evidence did not exist to support the jury's finding that there was informed consent and by finding the jury was "likely confused." CP at 242.

Initially, it is noted the grant of a new trial was not based on negligence. The court did not disturb the jury's finding in favor of Dr. Weiler regarding negligence. Informed consent and negligence are alternate methods to impose liability. *Burnet v. Spokane Ambulance*, 54 Wn. App. 162, 168-69, 772 P.2d 1027 (1989).

This court reviews a trial court's grant of a motion for a new trial for an abuse of discretion. *Palmer v. Jensen*, 132 Wn.2d 193, 197, 937 P.2d 597 (1997) (citing *Wooldridge v. Woolett*, 96 Wn.2d 659, 668, 638 P.2d 566 (1981)). Discretion is abused if

it is exercised without tenable grounds or reasons. *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

*Substantial Evidence.* A trial court abuses its discretion if it grants a motion for a new trial when substantial evidence supports the verdict. *Palmer*, 132 Wn.2d at 197-98. This court considers the facts and inferences in the light most favorable to the nonmoving party when reviewing the record for substantial evidence. *Hizey v. Carpenter*, 119 Wn.2d 251, 271-72, 830 P.2d 646 (1992) (quoting *Indus. Indem. Co. of Nw., Inc. v. Kallevig*, 114 Wn.2d 907, 915-16, 792 P.2d 520 (1990)).

Informed consent focuses on the patient's right to know about a bodily condition and to make decisions about that condition. A health care provider has a duty to disclose an abnormality which may indicate risk or danger in the patient's body. *Keogan v. Holy Family Hosp.*, 95 Wn.2d 306, 314, 622 P.2d 1246 (1980) (quoting *Gates v. Jensen*, 92 Wn.2d 246, 251, 595 P.2d 919 (1979)).

To prevail on her claim for failure to secure informed consent, RCW 7.70.050(1) requires Ms. McBride to prove: (a) Dr. Weiler failed to inform her of a "material fact" relating to treatment, (b) she consented to treatment without being aware of that fact, (c) a reasonably prudent patient under similar circumstances would not have consented if given such information, and (d) the treatment in question proximately caused Ms. McBride's

injury. At issue, here, is materiality.

In *Smith v. Shannon*, 100 Wn.2d 26, 33, 666 P.2d 351 (1983), our Supreme Court held that the determination of whether a fact is material is a two-step process. The first step in the process is to determine the scientific nature of the risk and the likelihood of its occurrence. *Id.* The second step is to determine whether the probability of the type of harm found to exist is a risk that a reasonable patient would consider in deciding on treatment. *Id.* "While the second step of this determination of materiality clearly does not require expert testimony, the first step almost as clearly does." *Id.* at 33.

The recent case of *Gomez v. Sauerwein*, 180 Wn.2d 610, 331 P.3d 19 (2014) is instructive. There, 32-year-old Christina Palma Anaya died from complications stemming from type II diabetes mellitus. Her estate appealed the trial court's dismissal of its claim that Mark Sauerwein, M.D., failed to obtain Ms. Anaya's informed consent to the doctor's decision to await a final blood test before acting on a preliminary test, which the doctor concluded was in error. Quoting *Keogan*, our Supreme Court noted, "'[T]he extent of disclosure will depend in part on the symptoms and general physical condition actually presented by the patient.'" *Gomez*, 180 Wn.2d at 620 (quoting *Keogan*, 95 Wn.2d at 318 n.3). Consequently, the court held, "a health care provider who believes the patient does not have a particular disease cannot be expected to inform the patient about

8

the unknown disease or possible treatments for it." *Gomez*, 180 Wn.2d at 618.

Applying *Gomez* to the facts here and viewing the facts in Dr. Weiler's favor as we must, Dr. Weiler had no duty to warn Ms. McBride of a possible infection two years after the procedure. Dr. Weiler believed the file was at the end of the root canal based on x-rays and instrument readings. He also believed he cleared out all bacteria and appropriately applied the necessary chemicals to mummify the surrounding tissue. He believed that the file in the tooth would present no complications. Nevertheless, he offered Ms. McBride the option to have the file removed by a specialist and cautioned her to come back if she experienced any trouble. She did not return. Because Dr. Weiler believed the patient was not going to experience any complications and because expert testimony confirmed that this belief was factually and medically reasonable, a reasonable jury could find that the risk of infection was not material.

Accordingly, substantial evidence shows Ms. McBride was provided all material information to decide to leave the file in the canal. Without establishing the first prong of a lack of informed consent claim, Ms. McBride's claim fails. The trial court should not have granted a new trial on this issue; nevertheless, it is noted the trial court was without the benefit of *Gomez*.

*Finding on Jury Confusion.* Based on the conclusion above, this court need not reach Dr. Weiler's challenge to the court's finding that the jury was "likely confused."[1] *See State v. Young*, 152 Wn. App. 186, 188 n.3, 216 P.3d 449 (2009) (courts need not reach additional issues when holding on other grounds is dispositive).

We reverse.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____      _____
Siddoway, C.J.                        Fearing, J.

_____
[1] CP at 242.