[No. 22962-1-I.   Division One.   January 16, 1990.]

LOIS J. RUFFER, *Appellant,* v. ST. FRANCES CABRINI HOSPITAL OF SEATTLE, *Defendant,* K. PETER KRETSCHMER, ET AL, *Respondents.*

*Nathan James Neiman,* for appellant.

*Dinah Pomeroy* and *Judith Constans,* for respondents.

COLEMAN, C.J.—Lois Ruffer appeals from an order granting defendant's motion for summary judgment dismissing her medical malpractice claim of failure to obtain proper informed consent. Ruffer contends that the trial court erred in (1) granting summary judgment in light of the defendant's admissions, and (2) accepting the defendant's testimony regarding the probabilities of risk. We affirm.

This is a medical malpractice action in which the plaintiff, Lois Ruffer, claims that the defendant, Dr. K. Peter Kretschmer, failed to obtain her informed consent prior to performing a diagnostic sigmoidoscopy (inspection of the interior of the sigmoid colon) and biopsy of the colon lining by not telling her that perforation of the bowel was a risk of the operation.

On July 11, 1982, Ruffer was admitted to Saint Cabrini Hospital presenting abdominal complaints. On July 14, 1982, at the request of Ruffer's treating physician, Dr. Kretschmer performed a rectal sigmoidoscopy during which a small sample of tissue was taken from the lining of Ruffer's colon in an effort to prove or disprove the presence

of pseudomembranous colitis, a disease affecting the mucous membrane of the colon. Approximately 5 hours after the sigmoidoscopy, Ruffer complained of abdominal pain. Dr. Kretschmer examined Ruffer and ordered abdominal X–rays which showed a perforation where the bowel was weakened by the biopsy. Ruffer was then taken to surgery where Dr. Kretschmer repaired the perforation and installed a colostomy.

Ruffer alleged that Dr. Kretschmer failed to obtain proper informed consent prior to the performance of the sigmoidoscopy and biopsy by not telling her that perforation of the bowel was a risk of the procedure. Ruffer states that she would have chosen either an alternative or no sigmoidoscopy if she had known that the procedure involved the risk of perforation of the colon. Dr. Kretschmer admits that he did not tell Ruffer of the risk of perforation. Dr. Kretschmer reasoned that because perforation was such an unlikely possibility, he did not think of it as a risk to disclose. Moreover, Dr. Kretschmer asserts that Ruffer's consent was complete and fully informed, stating that everything he did and did not do in his care and treatment of Ruffer was as a reasonable and prudent physician would have done at that time, both in the information he gave and in the performance of his treatment.

On March 23, 1988, Dr. Kretschmer moved for the summary dismissal of Ruffer's claim. The motion was granted and this appeal followed.

■■ We first consider whether the trial court erred in granting summary judgment. In reviewing an order of summary judgment, the appellate court engages in the same inquiry as the trial court. *Escalante v. Sentry Ins. Co.,* 49 Wn. App. 375, 743 P.2d 832 (1987), *review denied,* 109 Wn.2d 1025 (1988); *Hostetler v. Ward,* 41 Wn. App. 343, 704 P.2d 1193 (1985), *review denied,* 106 Wn.2d 1004 (1986). Summary judgment is proper only when the pleadings, depositions, and admissions in the record, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to

judgment as a matter of law. CR 56(c). All facts and reasonable inferences are considered most favorably to the nonmoving party. *Wilson v. Steinbach,* 98 Wn.2d 434, 437, 656 P.2d 1030 (1982). The moving party must meet this burden by setting out its version of the facts and alleging there is no genuine issue as to the facts offered. *Hash v. Children's Orthopedic Hosp. & Med. Ctr.,* 110 Wn.2d 912, 916, 757 P.2d 507 (1988). "While generally a question of fact is properly left to the trier of fact, when reasonable minds could reach but one conclusion, questions of fact may be determined as a matter of law." *Trane Co. v. Brown–Johnston, Inc.,* 48 Wn. App. 511, 513, 739 P.2d 737 (1987). Once there has been an initial showing of the absence of any genuine issue of material fact, the party opposing summary judgment must respond with more than conclusory allegations, speculative statements, or argumentative assertions of the existence of unresolved factual issues. *Trane,* at 513–14.

Upon submission by the moving party of adequate affidavits, the nonmoving party must bring forward specific facts that sufficiently rebut the moving party's contentions and reveal that a genuine issue as to material facts exists. *Halvorsen v. Ferguson,* 46 Wn. App. 708, 721, 735 P.2d 675 (1986), *review denied,* 108 Wn.2d 1008 (1987). A material fact, within the context of summary judgment, is one upon which "the outcome of the litigation depends in whole or in part". *Zobrist v. Culp,* 18 Wn. App. 622, 637, 570 P.2d 147 (1977). The alleged material facts in question before the trial court and on appeal are the risk of colon perforation incident to sigmoidoscopy and collaterally, the admitted failure of respondent to inform appellant of that risk.

Respondent contends that because the probability of colon perforation occurring during the course of a properly performed sigmoidoscopy is so remote, the risk was not material and thus he was under no obligation to disclose the risk to appellant. Respondent quantified the risk of

perforation as 1 in 20,000 to 50,000.[1] These numbers are not disputed by appellant. Appellant does not present medical testimony, by expert or otherwise, offering a second opinion quantifying the risk. Rather, appellant asserts that the existence of the risk as admitted and quantified by respondent establishes both causation and the existence of an undisclosed material fact, thereby forming the basis of her informed consent claim. Appellant maintains that this and other admitted facts entitled her to have a trier of fact determine whether or not the failure to disclose the risk of perforation results in respondent's liability. Appellant's contention is without merit.

The doctrine of informed consent is codified in Washington under RCW 7.70.050(1), (2), and (3).

(1) The following shall be necessary elements of proof that injury resulted from health care in a civil negligence case or arbitration involving the issue of the alleged breach of the duty to secure an informed consent by a patient or his representatives against a health care provider:

(a) That the health care provider failed to inform the patient of a material fact or facts relating to the treatment;

(b) That the patient consented to the treatment without being aware of or fully informed of such material fact or facts;

(c) That a reasonably prudent patient under similar circumstances would not have consented to the treatment if informed of such material fact or facts:

(d) That the treatment in question proximately caused injury to the patient.

(2) Under the provisions of this section a fact is defined as or considered to be a material fact, if a reasonably prudent person in the position of the patient or his representative would attach significance to it deciding whether or not to submit to the proposed treatment.

(3) Material facts under the provisions of this section which must be established by expert testimony shall be either:

(a) The nature and character of the treatment proposed and administered;

(b) The anticipated results of the treatment proposed and administered;

---

[1]Dr. Kretschmer, citing V. Gilbertson, "Proctosigmoidoscopy", *Cancer* 34:936 (1974); "Colon Perforation Occurring During Sigmoidoscopy", *Missouri Medicine* 65:969 (1968).

(c) The recognized possible alternative forms of treatment; or

(d) The recognized serious possible risks, complications, and anticipated benefits involved in the treatment administered and in the recognized possible alternative forms of treatment, including nontreatment.

The burden rests upon the plaintiff to prove that the health care provider failed to inform her of material information, *i.e.,* potential risks, in connection with the contemplated treatment. The necessary elements of proof in an informed consent action are: (1) the existence of a material fact relating to treatment unknown to the patient; (2) failure by the health care provider to disclose such material fact; (3) that had the material fact been disclosed, the patient would have chosen a different course; and (4) the treatment resulted in injury. RCW 7.70.050(1). If the plaintiff establishes each of the foregoing elements, the burden then shifts to the defendant to prove a defense justifying the failure to impart that material information. *Miller v. Kennedy,* 11 Wn. App. 272, 284, 522 P.2d 852 (1974), *aff'd,* 85 Wn.2d 151, 530 P.2d 334 (1975).

■ The *Miller* court established that it is within the province of the patient to evaluate the risks of treatment and the function of the health care provider to furnish the patient with information as to what those risks are. However, the doctrine does not impose an obligation upon the health care provider to disclose all possible risks, rather only those of a serious nature.[2] *Smith v. Shannon,* 100 Wn.2d 26, 31, 666 P.2d 351 (1983); *ZeBarth v. Swedish Hosp. Med. Ctr.,* 81 Wn.2d 12, 25, 499 P.2d 1, 52 A.L.R.3d 1067 (1972); *Adams v. Richland Clinic, Inc.,* 37 Wn. App.

---

[2]In *Smith v. Shannon,* 100 Wn.2d 26, 666 P.2d 351 (1983) the Supreme Court cited other portrayals of risk in an effort to define or at least qualify the characterization of a risk of "serious nature," including: "high risk", *Gates v. Jensen,* 92 Wn.2d 246, 251, 595 P.2d 919 (1979); "grave risks," *Meeks v. Marx,* 15 Wn. App. 571, 578, 550 P.2d 1158 (1976); "medically significant risks", *Miller,* at 293 (quoting American Hosp. Ass'n, *Statement of a Patient's Bill of Rights* (1972); and "reasonably foreseeable risk", *Mason v. Ellsworth,* 3 Wn. App. 298, 313, 474 P.2d 909 (1970). *Shannon,* at 31.

650, 656, 681 P.2d 1305 (1984). The working rule for disclosure of a given risk is the test of materiality. *Shannon,* at 31.

The determination of materiality is a 2–step process. The first step is to ascertain the scientific nature of the risk and the likelihood of its occurrence. *Shannon,* at 33; *Adams,* at 657–58. This determination necessitates "some" expert testimony as such facts are generally not describable without medical training. *Adams,* at 658. Only a physician or other qualified expert is capable of determining the existence of a given risk and the chance of it occurring. *Shannon,* at 33. The court in *Shannon* observed that just as patients require disclosure of risks by their physicians to give informed consent, "a trier of fact requires description of risks by an expert to make an informed decision." *Shannon,* at 33–34. The statute also enumerates those material facts which must be established by expert testimony. That list includes "[t]he recognized serious possible risks, complications, and anticipated benefits involved in the treatment administered and in the recognized possible alternative forms of treatment, including nontreatment." RCW 7.70.050(3)(d).

The second step of the materiality test requires a determination of whether the probability of the type of harm described is a risk which a reasonable patient would consider in deciding on treatment. *Shannon,* at 33. *See also* RCW 7.70.050(2).

It is meaningful to note that the *Shannon* court adopted this test while considering a factual situation which involved, much like the instant case, a failure to disclose a known risk. There, the patient–plaintiff presented complaints indicating possible kidney complications and X–rays were ordered. The procedure involved administering an intravenous solution (Renographin–60) designed to enhance the X–ray image. The evidence at trial established that while the treating physician disclosed several risks of the procedure, including becoming flushed, nauseous, or unconscious, he did not inform the plaintiff of 10 additional

risks which were mentioned in the *Physician's Desk Reference* (PDR), including inflammation of the vein, the complication which subsequently manifested itself in the plaintiff. The trial court concluded that the plaintiff failed to prove that any of the risks referenced in the PDR were in fact medically significant risks, noting in particular that the plaintiff failed to provide sufficient expert testimony on the issue. *Shannon,* at 28–29. The Supreme Court affirmed.

Having set the stage, the crucial issue confronting this court is whether the risk of colon perforation resulting from a sigmoidoscopy with biopsy is material. As has been shown, unless the risk is serious—whether characterized as grave, medically significant, or reasonably foreseeable—and unless expert testimony can establish its existence, nature, and likelihood of occurrence, the presence of the risk, as a matter of law, is not material and no duty of disclosure manifests in the health care provider. The only expert testimony contained in the record concerning what risk exists and the likelihood of its occurrence and the only testimony upon which the trier of fact could make an informed decision was provided by the respondent in his answers to interrogatories and request for admissions.

Appellant contends that respondent's testimony alone is sufficient to preserve her right to trial and that additional expert testimony is not required. However, when the admissions of respondent are cast in the light of the controlling case law and the statute, the risk of colon perforation incident to a properly performed sigmoidoscopy is nonmaterial. The existence of a risk is not enough. Citing two separate medical sources (see footnote 1), respondent quantified the risk of perforation as 1 in 20,000 to 50,000. Such a risk, as a matter of law, is not foreseeable. The court in *Mason v. Ellsworth,* 3 Wn. App. 298, 474 P.2d 909 (1970) found that a .75 percent risk that perforation of the esophagus might occur during an esophagoscopy was so small that it was not reasonably foreseeable and did not require disclosure. When the numbers provided by respondent are characterized in percentages they read as .002 percent to

.005 percent, a risk 150 to 375 times smaller than the risk found legally insufficient in *Mason.* Under *Mason,* the risk described in the instant case was not foreseeable and therefore not material.

Appellant further contends that respondent, by confusing foreseeability with materiality, improperly caused the trial court to decide a fact question and thereby obtained the improper dismissal of her claim. This contention is also without merit. Foreseeability and materiality are not mutually exclusive principles of law. In fact, within the context of informed consent, they are highly interrelated. As set forth above, foreseeability is an appropriate indicator of the seriousness of a given risk. Only those risks of a serious nature are required to be disclosed. If a risk is not foreseeable, it almost certainly is not serious and, therefore, not material.

Appellant is correct that a court may not resolve fact issues in ruling on summary judgment. However, a court may find that no such issues are raised by the allegations of the pleadings if it so appears from uncontroverted facts in affidavits, depositions, and admissions on file. *Balise v. Underwood,* 62 Wn.2d 195, 381 P.2d 966 (1963). Because the record is devoid of any expert testimony from appellant concerning the risk of perforation, the trial court was clearly entitled to rely upon respondent's characterization of the risk, and following *Mason,* properly determined that the risk was not material and effectively not at issue in the case.

Finally, appellant contends that it was error for the trial court to accept respondent's testimony regarding the probability of risk. This contention is curiously contradictory. It is paralogistic to ask this court, on the one hand, to accept respondent's admission of the risk for purposes of satisfying the statutory and common law requirements of expert testimony and then ask, on the other hand, that this court reject respondent's quantification of the risk as too small.

Respondent admitted that the risk of perforation incident to a sigmoidoscopy was greater than the cited 1 in

20,000 to 50,000 when the procedure included biopsy. Respondent did not quantify how much greater the risk was, only that the risk increased. Appellant argues that without quantification of this greater risk, it was improper for the trial court to determine that the risk was small and thus immaterial. However, the established case law clearly places the burden on the appellant to submit affidavits affirmatively presenting the factual evidence upon which she relies. Appellant may not avoid respondent's motion for summary judgment by resting on mere allegations, but must set forth specific facts showing that there exists a genuine issue of material fact. *Plaisted v. Tangen,* 72 Wn.2d 259, 432 P.2d 647 (1967). Moreover, the doctrine of informed consent required the appellant to present expert testimony establishing the probability of sigmoidoscopy with biopsy. Appellant failed to meet her burden on all counts. The trial court reasonably proceeded with the information brought before it. The term "greater," left unqualified by appellant, is nebulous. It was not for the trial court to give the unmeasured "greater" risk a value. Therefore, the trial court was correct in dismissing appellant's claim as a matter of law.

The summary judgment of the trial court is affirmed.

SWANSON, J., and RINGOLD, J. Pro Tem., concur.

Reconsideration denied February 14, 1990.

Review denied at 114 Wn.2d 1023 (1990).