[No. 10503-2-III. Division Three. April 2, 1992.]

ANN M. THOMAS, *Appellant*, v. WILFAC, INC., ET AL, *Defendants*, KADLEC MEDICAL CENTER FOUNDATION, INC., ET AL, *Respondents.*

256

*Marcia M. Meade* and *Dawson & Meade, P.S.*, for appellant.

*Dennis L. Fluegge, Jerome R. Aiken,* and *Meyer, Fluegge & Tenney; Dan W. Keefe, Christopher J. Kerley,* and *Keefe, King & Bowman*, for respondents.

SWEENEY, J. — Ann M. Thomas brought this action against Dr. Thomas Plumley and Kadlec Emergency Medical Center (Kadlec) alleging medical negligence, lack of informed consent and violation of the Consumer Protection Act (CPA). Prior to trial, the court granted summary judgment in favor of Kadlec and Dr. Plumley on the CPA claim. A jury returned a defense verdict on the medical negligence and lack of informed consent claims. Ms. Thomas moved for judgment notwithstanding the verdict. The court denied the motion. We affirm.

### FACTUAL BACKGROUND

During the summer of 1982, Ms. Thomas worked for a wheat farmer. In late July, her duties included the application of 4 percent Malathion powder to harvested wheat. Malathion is a pesticide used to control insects. Ms. Thomas' last contact with the pesticide was between noon and 2 p.m. on July 30. Following that exposure, she complained of flu-like symptoms, including shortness of breath, congestion and dizziness. Angelic Thomas, her mother, took her to Kadlec Emergency Medical Center, a walk-in emergency treatment facility in Kennewick operated by Kadlec Medical Center, at about 4 p.m. the following day. Mrs. Thomas knew of Kadlec from an advertising brochure she received in the mail. In the brochure, Kadlec advertised that its emergency treatment center was staffed by physicians specializing in emergency medicine.

At Kadlec, Ms. Thomas told a nurse she had been working with Malathion. Dr. Plumley examined Ms. Thomas. Dr. Plumley was a resident in radiology with experience in emergency room medicine. He ruled out pesticide poisoning and diagnosed asthma. He treated Ms. Thomas and instructed her to either return or see her family physician if she did not improve.

Two days later, Ms. Thomas consulted Dr. Ralph DeBit, her family physician. He diagnosed Malathion poisoning and admitted her to Kennewick General Hospital. There, an internal medicine specialist, Dr. John Intravartolo, examined

her and concluded she suffered from asthma. He treated her and she improved.

Ms. Thomas brought this action against Kadlec and Dr. Plumley alleging medical malpractice, lack of informed consent and violation of the CPA. By general verdict, the jury found in favor of Dr. Plumley and Kadlec. Ms. Thomas' motion for a judgment notwithstanding the verdict was denied. This appeal followed.

## ISSUES PRESENTED

Ms. Thomas contends the court erred when it (1) denied her motion for judgment notwithstanding the verdict on the issues of informed consent and negligence, (2) instructed the jury on a physician's liability for error in judgment, (3) refused to admit evidence on her CPA claim and withdrew an exhibit (advertisement for the emergency center) from the jury's consideration, (4) restricted her cross examination of Dr. Plumley, and (5) dismissed her CPA claim on summary judgment.

## INFORMED CONSENT

Ms. Thomas argues the trial court erred in refusing to rule, as a matter of law, that Dr. Plumley failed to secure an informed consent prior to treatment. The court submitted the issue of informed consent to the jury. Specifically, she asserts Dr. Plumley failed: (1) to inform her he did not believe she had Malathion poisoning; (2) to call the poison control center; (3) to give her an antidote for Malathion poisoning; (4) to inform her of the short timeframe for administration of the antidote; (5) to inform her of the future risk of developing organophosphate-induced delayed neurotoxicity; and (6) to tell her he was not an emergency medicine specialist.

A trial court should only grant a motion for judgment notwithstanding the verdict if it concludes, as a matter of law, there is no evidence or reasonable inference to support a verdict in favor of a nonmoving party. *Baldwin v. Sisters of Providence in Wash., Inc.*, 112 Wn.2d 127, 132, 769 P.2d 298 (1989); *Hojem v. Kelly*, 93 Wn.2d 143, 145, 606 P.2d 275

(1980); CR 50. A trial court must accept the truth of the nonmoving party's evidence and must view all reasonable inferences in the light most favorable to the nonmoving party. *Douglas v. Freeman*, 117 Wn.2d 242, 247, 814 P.2d 1160 (1991). When competent evidence or reasonable inferences exist upon which reasonable minds might reach conclusions consistent with the verdict, the question is for the jury. *Lockwood v. AC&S, Inc.*, 109 Wn.2d 235, 243, 744 P.2d 605 (1987); *Grader v. Lynnwood*, 53 Wn. App. 431, 437, 767 P.2d 952, *review denied*, 113 Wn.2d 1001, *cert. denied*, 493 U.S. 894 (1989). In reviewing a trial court's decision to deny a motion for a judgment notwithstanding the verdict, the reviewing court applies the same standard as the trial court. *Industrial Indem. Co. of the Northwest, Inc. v. Kallevig*, 114 Wn.2d 907, 915, 792 P.2d 520 (1990).

■ A physician has a duty to disclose the risks of proposed treatment before obtaining a patient's consent for treatment. *Smith v. Shannon*, 100 Wn.2d 26, 29, 666 P.2d 351 (1983); *Burnet v. Spokane Ambulance*, 54 Wn. App. 162, 168, 772 P.2d 1027, *review denied*, 113 Wn.2d 1005 (1989); *Miller v. Kennedy*, 11 Wn. App. 272, 522 P.2d 852 (1974), *aff'd*, 85 Wn.2d 151, 530 P.2d 334 (1975). A physician does not have a duty to explain all risks, only those of a material nature. *ZeBarth v. Swedish Hosp. Med. Ctr.*, 81 Wn.2d 12, 25, 499 P.2d 1, 52 A.L.R.3d 1067 (1972); *Ruffer v. St. Frances Cabrini Hosp.*, 56 Wn. App. 625, 630, 784 P.2d 1288, *review denied*, 114 Wn.2d 1023 (1990); RCW 7.70.050(2). The question of materiality is for the trier of fact. *Adams v. Richland Clinic, Inc., P.S.*, 37 Wn. App. 650, 658, 681 P.2d 1305 (1984).

Here, the court did not err in denying Ms. Thomas' motion for judgment notwithstanding the verdict on the issue of informed consent. Dr. Plumley diagnosed Ms. Thomas as suffering from asthma, not Malathion poisoning. He did not treat her for Malathion poisoning. Therefore, he did not have a duty to inform her of the timeframe for administering an antidote or her future risk of developing organophosphate-

induced delayed neurotoxicity. A finding that Dr. Plumley did not breach his duty of care inheres in the jury's verdict.

■■ Failure to diagnose a condition is a matter of medical negligence, not a violation of the duty to inform a patient. *Bays v. St. Luke's Hosp.*, 63 Wn. App. 876, 881, 825 P.2d 319 (1992). Informed consent and medical negligence are alternate theories of liability. *Burnet*, at 169. Here, it is undisputed Dr. Plumley did not diagnose Malathion poisoning. Ms. Thomas has not established that Dr. Plumley failed to inform her of a material fact relating to treatment. We reject Ms. Thomas' assertion that Dr. Plumley was required to inform her of his medical qualifications. RCW 7.70.050(1) requires disclosure of material facts relating to treatment, not disclosure of a physician's qualifications.

The court properly denied Ms. Thomas' motion for judgment notwithstanding the verdict on the issue of informed consent.

### NEGLIGENCE

Ms. Thomas asserts Dr. Plumley was negligent in not calling the poison control center after Ms. Thomas advised him she may have been poisoned. She also alleges he was negligent in not ordering a blood test for Malathion poisoning.

■■ Negligence is generally a question of fact for the jury and should be decided as an issue of law by the court only in rare cases. *Rhoades v. DeRosier*, 14 Wn. App. 946, 948-49, 546 P.2d 930 (1976). Appellate review is limited to whether the evidence presented was sufficient to sustain the jury's verdict. *Industrial Indem. Co. of the Northwest, Inc. v. Kallevig, supra* at 916.

We find substantial evidence in this record to support the verdict. Dr. Plumley asked Ms. Thomas about her work with Malathion. He asked about her symptoms and particularly those which might suggest organophosphate poisoning. She did not have those symptoms. Dr. Plumley ordered a chest x-ray and physically examined Ms. Thomas. He concluded she suffered from asthma. Although Dr. DeBit admitted Ms.

Thomas to the hospital for Malathion poisoning, he agreed asthma was a possible diagnosis. Dr. Intravartolo assumed responsibility for Ms. Thomas' care following her admission to the hospital. He concluded she was suffering from asthma. Three experts in emergency room medicine testified that Dr. Plumley's treatment of Ms. Thomas was within the standard of care for emergency room physicians in the state of Washington. There was sufficient evidence presented for the jury to conclude Ms. Thomas suffered from asthma. The court did not err in denying Ms. Thomas' motion for a judgment notwithstanding the verdict on the issue of negligence.

### EVIDENTIARY RULINGS

Ms. Thomas argues it was error for the court to withdraw Kadlec's promotional brochure from the jury's consideration. She submits the brochure was relevant to show both her mother's motivation in taking her to Kadlec and her own belief she was being treated by a specialist. Ms. Thomas also asserts the court erred in refusing to admit Dr. Plumley's employment contract with Northwest Emergency Physicians (NEP). She contends the contract established a higher standard than imposed by statute. *See* RCW 7.70.040.

■ ■ Admission of evidence lies within the sound discretion of the trial court. *Brouillet v. Cowles Pub'g Co.*, 114 Wn.2d 788, 801, 791 P.2d 526 (1990); *Davis v. Globe Mach. Mfg. Co.*, 102 Wn.2d 68, 76, 684 P.2d 692 (1984). An abuse of discretion occurs if no reasonable person would take the position adopted by the trial court. *State v. Huelett*, 92 Wn.2d 967, 969, 603 P.2d 1258 (1979) (citing *State v. Blight*, 89 Wn.2d 38, 41, 569 P.2d 1129 (1977)).

The court originally admitted the Kadlec brochure solely on the issue of whether Dr. Plumley was an agent of Kadlec. Following Kadlec's admission that Dr. Plumley was its agent, the court withdrew the brochure from the jury's consideration. We find no abuse of discretion.

Nor did the court err in refusing to admit the employment contract between Dr. Plumley and NEP. The plaintiff

in a civil action based on professional negligence must prove the "defendant . . . failed to exercise that degree of skill, care, and learning possessed at that time by other persons in the same profession . . .". RCW 4.24.290. The statutory standard of care applicable to health care professionals provides that a plaintiff must prove the health care provider failed to exercise that degree of care, skill and learning expected of a reasonably prudent health care provider at that time in the profession or class to which he belongs acting in the same or similar circumstances. RCW 7.70.040.

▮ Dr. Plumley is to "provide medical services with the highest degree of medical competency . . ." according to his employment contract with NEP. Ms. Thomas was not a party to the contract. She could not qualify as a third party beneficiary. *Del Guzzi Constr. Co. v. Global Northwest Ltd.*, 105 Wn.2d 878, 886, 719 P.2d 120 (1986). Ms. Thomas did not establish Dr. Plumley and NEP intended by their contract to confer a benefit on her as a patient. The court did not err in excluding the contract. ER 402.

### ERROR IN JUDGMENT INSTRUCTION

Ms. Thomas contends the court erred in instructing the jury on a physician's liability for error in judgment. The court instructed the jury that

> [a] physician is not liable for an error of judgment if, in arriving at that judgment, the physician exercised reasonable care and skill within the standard of care which that physician is obliged to follow.

Relying on *Rogers v. Meridian Park Hosp.*, 307 Or. 612, 772 P.2d 929 (1989), Ms. Thomas asserts the instruction was inappropriate, confusing and a comment on the evidence.

▮ The efforts of a physician may be unsuccessful or in error without being negligent if the physician complied with the standard of care of his peers. *Miller v. Kennedy, supra* at 280. The "error in judgment" instruction is appropriate in Washington when (1) in arriving at a judgment, the physician exercised reasonable care and skill within the standard of

care he was obliged to follow, and (2) the physician was confronted with a choice among competing therapeutic techniques or among medical diagnoses. *Watson v. Hockett*, 107 Wn.2d 158, 165, 727 P.2d 669 (1986) (citing with approval *Miller v. Kennedy*, 91 Wn.2d 155, 588 P.2d 734 (1978)). The giving of a particular instruction is within the discretion of the trial judge. *Petersen v. State*, 100 Wn.2d 421, 440, 671 P.2d 230 (1983). The court did not abuse its discretion.

CROSS EXAMINATION OF DR. PLUMLEY

Ms. Thomas argues that she should have been allowed on cross examination to inquire into whether Dr. Plumley was required to be a member of the American College of Emergency Physicians as a condition of his employment. She alleges her examination concerned only qualifications, skills and education and did not refer to the contract between Dr. Plumley and NEP.

The scope of cross examination is within the broad discretion of the trial court and will not be overturned on appeal absent an abuse of discretion. *Miller v. Peterson*, 42 Wn. App. 822, 827, 714 P.2d 695, *review denied*, 106 Wn.2d 1006 (1986). Having refused to admit the Kadlec-NEP contract, the court properly refused to allow Ms. Thomas to question Dr. Plumley concerning his agreement with NEP. Ms. Thomas was permitted to cross-examine Dr. Plumley regarding his qualifications and credentials. The issue in this case is whether Dr. Plumley's management of Ms. Thomas' treatment comported with acceptable medical practice in this state. The court did not abuse its discretion.

CONSUMER PROTECTION ACT

Finally, Ms. Thomas contends the court erred in dismissing her CPA claim against Kadlec on summary judgment. She argues Kadlec in its brochure represented the facility as "a walk-in emergency treatment center staffed by physicians who specialize in emergency medicine." Ms. Thomas alleges this advertisement was a violation of the CPA

because the center was staffed by a second-year radiology resident.

A private party may bring an action for damages under the CPA if (1) the conduct complained of is unfair or consists of deceptive acts, (2) in the sphere of trade or commerce, (3) the conduct impacts the public interest, and (4) causes the plaintiff injury to business or property. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 785-93, 719 P.2d 531 (1986); *Jaramillo v. Morris*, 50 Wn. App. 822, 826, 750 P.2d 1301, *review denied*, 110 Wn.2d 1040 (1988); RCW 19.86.090. However, in medical malpractice actions CPA claims are limited to the entrepreneurial aspects of the practice of medicine. *Quimby v. Fine*, 45 Wn. App. 175, 181, 724 P.2d 403 (1986), *review denied*, 107 Wn.2d 1032 (1987); *Burnet v. Spokane Ambulance*, 54 Wn. App. 162, 166, 772 P.2d 1027, *review denied*, 113 Wn.2d 1005 (1989).

We find Ms. Thomas failed to establish a necessary element of a private CPA violation, that is, injury to business or property. *Hangman Ridge*, at 792; RCW 19.86.090. Inherent in the jury's general verdict is a finding Ms. Thomas did not suffer any injury or damage as a result of Dr. Plumley's care. The court did not err in dismissing the CPA violation.

We affirm.

SHIELDS, C.J., and THOMPSON, J., concur.

Review denied at 119 Wn.2d 1020 (1992).