[No. 13903-4-III.   Division Three.   December 7, 1995.]

MARY IRENE VILLANUEVA, ET AL., *Individually and as Co-Personal Representatives, Appellants*, v. JOHN F. HARRINGTON, *Respondent*.

*David A. Williams*, for appellants.

*Kathryn M. Battuello* and *Elliott, Moody & Battuello*, for respondent.

SWEENEY, J. — ■ Soon after birth, Mary Irene Villanueva's and Douglas Mitchell Uerling's son developed a cephalhematoma, a collection of blood and fluid in the posterior portion of the scalp. He had seizures. His head was deformed. And he also suffered acute renal failure, hypoglycemia, respiratory difficulties, and disseminated intravascular coagulation, all of which eventually resulted in, or contributed to, multiorgan failure. The infant died a few weeks after delivery. Villanueva and Uerling brought an action against Dr. John F. Harrington, Villanueva's obstetrician, for negligence and for failure to obtain their informed consent. They claimed they were not informed of the risks of and alternatives to forceps delivery and that it

was the forceps delivery which led to their son's injury and death. The trial court held that Villanueva and Uerling had failed to create a genuine issue of material fact by expert testimony and granted Dr. Harrington's summary dismissal of the informed consent claim. A jury found in favor of Dr. Harrington on the negligence claim. Villanueva and Uerling appeal. Although they assign error to the verdict, they neither briefed nor argued that assignment of error and it is therefore not before this court. We must therefore pass only on the summary dismissal of their informed consent claim. We reverse and remand.

The standard of review for a summary judgment is well settled and need not be repeated here[1] other than to again note that we consider the evidence in a light most favorable to the nonmoving parties—Villanueva and Uerling.[2]

In order to avoid summary judgment, Villanueva and Uerling must show, among other things, that Dr. Harrington failed to inform them of a material fact or facts relating to Villanueva's treatment.[3] Dr. Harrington does not dispute that he applied forceps to rotate and deliver the baby. Nor does he dispute that he did not obtain consent for the use of the forceps. At issue here is whether Villanueva and Uerling made a sufficient showing that Dr. Harrington should have informed them of the material risks associated with a forceps delivery.

■ A fact is material if "a reasonably prudent person in the position of the patient or his representative would attach significance to it deciding whether or not to submit to the proposed treatment."[4] The test for materiality is an objective one. A patient has the right to know those

---

[1]*Grimsrud v. State*, 63 Wn. App. 546, 548, 821 P.2d 513 (1991) (on summary judgment this court engages in the same inquiry as the trial court).

[2]*Stephens v. City of Seattle*, 62 Wn. App. 140, 143, 813 P.2d 608, *review denied*, 118 Wn.2d 1004 (1991).

[3]RCW 7.70.050(1)(a).

[4]RCW 7.70.050(2); *Smith v. Shannon*, 100 Wn.2d 26, 30-31, 666 P.2d 351 (1983) ("informed consent doctrine 'does not place upon the physician a duty to elucidate upon all of the possible risks, but only those of a serious nature'"

hazards to which a reasonable prudent person, in that patient's position, probably would attach significance when deciding on whether to undergo the treatment.[5] If the risk meets this criterion, it is material and must be disclosed.

The determination of materiality is a two-step process: (1) the scientific nature of the risk must be ascertained (the nature of the harm and the probability of its occurrence), and (2) the trier of fact must then decide whether that probability is a risk which a reasonable patient would consider in deciding on treatment.[6] The first step of the test requires expert testimony.[7] Only a physician or other qualified expert is capable of determining the existence of a given risk and the chance of its occurrence.[8] Specifically, RCW 7.70.050(3)(d) requires that the plaintiff show by expert testimony that "[t]he recognized serious possible risks, complications, and anticipated benefits involved in the treatment administered and in the recognized possible alternative forms of treatment, including nontreatment."

With this standard in mind, we review the facts in a light most favorable to Villanueva and Uerling. Dr. Peter Watson testified that a forceps delivery "does involve risk" which he thought "would be appropriate to discuss . . . with the patient." Dr. Mize Conner talked about the occurrence of risks associated with a forceps delivery:

(quoting *ZeBarth v. Swedish Hosp. Medical Ctr.*, 81 Wn.2d 12, 25, 499 P.2d 1 (1972))); *Estate of Lapping v. Group Health Coop.*, 77 Wn. App. 612, 623, 892 P.2d 1116 (1995) (Washington follows a reasonable patient standard, as opposed to a professional medical standard); *Thomas v. Wilfac, Inc.*, 65 Wn. App. 255, 260, 828 P.2d 597 ("[a] physician does not have a duty to explain all risks, only those of a material nature"), *review denied*, 119 Wn.2d 1020 (1992).

[5]*Shannon*, 100 Wn.2d at 31 (quoting *Miller v. Kennedy*, 11 Wn. App. 272, 287, 522 P.2d 852 (1974), *aff'd per curiam*, 85 Wn.2d 151, 530 P.2d 334 (1975)); *Estate of Lapping*, 77 Wn. App. at 624 (risk is material "if any rational trier of fact could find, based on a preponderance of evidence, that a reasonably prudent person in the position of the patient, when deciding whether to submit to a proposed treatment would have attached significance to the fact in issue").

[6]*Shannon*, 100 Wn.2d at 33; *Ruffer v. St. Frances Cabrini Hosp.*, 56 Wn. App. 625, 631, 784 P.2d 1288, *review denied*, 114 Wn.2d 1023 (1990).

[7]*Shannon*, 100 Wn.2d at 33.

[8]*Shannon*, 100 Wn.2d at 33-34.

> Cephalhematomas are common as can be and certainly do not warrant any imputation of failure to meet the standard of care or any improper behavior. Skull fractures have been known to occur with proper forceps application and no evidence of any improper use at all. So there are things that can happen.

He noted the risks associated with mid-forceps delivery as "[t]rauma to the baby, misapplication of the forceps, cephalhematoma, skull fracture, facial nerve damage, lacerations . . . ." Dr. Maclyn Wade agreed "that there can be an injury to a fetus even when the use of forceps are applied properly and used appropriately." Dr. Stewart Hilscher testified that "[c]ephalhematoma is a well-recognized risk of forceps delivery/attempt. It is most often caused by the use of forceps. It is a very rare complication of Cesarean section and/or 'forces of labor' alone."

There is therefore ample expert testimony of the scientific nature of the risks associated with the use of forceps. The trial court's conclusion to the contrary is error.

During oral argument, Dr. Harrington also urged that Villanueva and Uerling had not shown that the application of forceps was the proximate cause of the baby's injury and death. Our review of the record convinces us otherwise.

Dr. Hilscher testified that "the probable cause of the cephalhematoma . . . was the application of forceps. Had this baby been delivered by Cesarean section without [the] application of forceps there most probably would have been no cephalhematoma. As I said at my deposition, I never saw a cephalhematoma where forceps had not been used." Based on his review of the chart, Dr. Watson correlated "a sudden, profound neurologic impact on the baby" with the application of forceps.

When the evidence here is viewed in a light most favorable to Villanueva and Uerling, they have made a showing that cephalhematoma is a common complication of a

forceps delivery, that alternatives were available[9] and that their baby died as the result of complications of a cephalhematoma. The expert testimony established the "existence, nature, and likelihood of occurrence . . . ."[10] And it is for the trier of fact to determine whether this complication should have been disclosed. The trial court therefore erred in dismissing their informed consent claim on summary judgment.

The matter is reversed and remanded for trial on the issue of informed consent.

THOMPSON, C.J., and MUNSON, J., concur.

---

[9]Dr. Conner testified to alternatives available to forceps delivery—"reasonable alternatives" included "[v]acuum extractor, forceps delivery, Cesarean section or letting the mother push longer."

[10]*Ruffer*, 56 Wn. App. at 632.