Teresa L. LUKE, individually and on behalf of their marital community and as Guardian ad Litem for her minor children; Andrew R. Luke, individually and on behalf of their marital community; Hayden R. Luke; Riley A. Luke, Plaintiffs–Appellants,

v.

FAMILY CARE AND URGENT MEDICAL CLINICS, a Corporation of Washington State; Robert D. Thornton, M.D.; Howard Bruce Goodwin, PA–C; Family Urgency Care Clinics Minnehaha; Hischool Pharmacy, Inc., a Corporation of Washington State, d/b/a Hi–School True Value Hardware # 4600; Minnehaha Drugs Inc., a Corporation of Washington State, d/b/a Hi School Pharmacy; Emergency Rooms, PS; Jerry J. Fisher, Defendants–Appellees.

No. 06–35056.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 7, 2007.

Filed Aug. 21, 2007.

Christopher Otorowski, Esq., Carol N. Johnston, Esq., Susan Carol Eggers, Esq., Otorowski Johnston Diamond & Golden PLLC, Bainbridge Island, WA, for Plaintiffs–Appellants.

Janet M. Schroer, Esq., Michael D. Hoffman, Stephen R. Rasmussen, Esq., Hoffman Hart & Wagner, LLP, Portland, OR, Joanne Henry, Esq., Peter John Kesling, Esq., Sloan Bobrick & Oldfield, University Place, WA, for Defendants–Appellees.

Before: CANBY, TASHIMA, and CALLAHAN, Circuit Judges.

## MEMORANDUM *

Plaintiff Teresa Luke appeals from the district court's grant of summary judgment in this diversity medical malpractice suit against certain doctors from the Family Care and Urgent Medical Clinic ("Clinic") who did not detect her idiosyncratic fulminant liver failure and the Hi–School Pharmacy ("Pharmacy") that provided her with Antabuse. The parties are familiar with the facts, and we do not repeat them except where necessary to the disposition of this case.

We review the district court's grant of summary judgment de novo, and we affirm on all of Luke's claims against the Pharmacy and Dr. Fisher in their entirety. We also affirm the district court's grant of summary judgment to all defendants on the failure to warn claims under Washington's informed consent law. As for Luke's standard of care claims against the physician's assistant and the supervising doctors from the Clinic, however, we vacate the district court's order and remand for a ruling on the admissibility of Luke's supplemental expert declarations and the new evidence concerning causation.

## I.

Luke contends that the 1 in 25,000 chance of liver failure was a material risk,

---

* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

and therefore the Clinic had a duty to warn her about the risk under Washington's informed consent law.[1] *See* Wash. Rev.Code § 7.70.050. The district court examined the evidence and concluded that the 1 in 25,000 to 1 in 40,000 chance of liver failure was not material as a matter of law, and therefore the Clinic had no duty to warn Mrs. Luke of that risk under Washington's informed consent law. Washington's informed consent law requires a plaintiff to show:

(a) That the health care provider failed to inform the patient of a material fact or facts relating to the treatment;

(b) That the patient consented to the treatment without being aware of or fully informed of such material fact or facts;

(c) That a reasonably prudent patient under similar circumstances would not have consented to the treatment if informed of such material fact or facts;

(d) That the treatment in question proximately caused injury to the patient.

Wash. Rev.Code § 7.70.050(1). Under Washington state law, "[t]he informed consent doctrine 'does not place upon the physician a duty to elucidate upon all of the possible risks, but only those of a serious nature.'" *Smith v. Shannon,* 100 Wash.2d 26, 666 P.2d 351, 354–55 (1983) (quoting *ZeBarth v. Swedish Hosp. Med. Ctr.,* 81 Wash.2d 12, 499 P.2d 1, 9 (1972)). "[U]nless a risk is serious—whether characterized as grave, medically significant, or reasonably foreseeable—and unless expert testimony can establish its existence, nature, and likelihood of occurrence, the presence of risk, as a matter of law, is not material and no duty of disclosure manifests in the health care provider." *Ruffer*

*v. St. Frances Cabrini Hosp.,* 56 Wash. App. 625, 784 P.2d 1288, 1292 (1990).

■ In this case, there is no dispute that the risk of Mrs. Luke's particular, "idiosyncratic" reaction to Antabuse was, at the most, 1 in 25,000. In *Ruffer,* the Washington Court of Appeals held that, as a matter of law, a 1 in 20,000 to 50,000 risk of colon perforation incident to a sigmoidoscopy was not foreseeable, and therefore immaterial as a matter of law. 784 P.2d at 1292–93; *see also Smith v. Shannon,* 666 P.2d at 357–58 (affirming directed verdict on an 8.6 in 1 million to .05 percent chance of phlebitis and collecting cases); *Mason v. Ellsworth,* 3 Wash.App. 298, 474 P.2d 909, 919–20 (1970) (concluding .75 chance was not material as a matter of law). Luke failed to establish that the risk of fulminant hepatitis was foreseeable and material, therefore, the Clinic had no duty to warn her about the risk when prescribing Antabuse. The district court's grant of summary judgment on Mrs. Luke's failure to warn theory was proper and we affirm.

## II.

Luke alleged separate causes of action for falling below the standard of care against Dr. Fisher and the physician's assistant who conducted the initial screening and prescribed Antabuse and the physician's assistant's supervising physicians. A duty to follow the standard of care may exist independently of a duty to warn. On appeal, Mrs. Luke argues that the Clinic owed her a duty of care to order baseline and follow-up liver function tests and to order a liver function test when Dr. Fisher examined her for her tick bite. Although she concedes that the baseline liver function tests would probably have been nor-

---

[1]. To the extent Luke attempts on appeal to recharacterize the risk as a 1 in 4 chance of abnormal liver enzyme levels, we refuse to

consider the argument. *See Pfingston v. Ronan Eng'g Co.,* 284 F.3d 999, 1004 (9th Cir. 2002).

mal, Mrs. Luke argues that a follow up test within two to four weeks may have shown elevated liver enzymes that would show emergent liver damage.

To bring a cause of action for violating a duty of care under Washington's medical negligence law, a plaintiff must prove the following elements:

> (1) The health care provider failed to exercise that degree of care, skill, and learning expected of a reasonably prudent health care provider at that time in the profession or class to which he belongs, in the state of Washington, acting in the same or similar circumstances;
>
> (2) Such failure was a proximate cause of the injury complained of.

Wash. Rev.Code § 7.70.040. Expert testimony is required to show causation. *See Morinaga v. Vue*, 85 Wash.App. 822, 935 P.2d 637, 642 (1997) (noting need for expert testimony to show prudence of a practice and causation). An expert opinion that is merely a conclusory statement without adequate supporting facts is insufficient to defeat a summary judgment motion. *Guile v. Ballard Cmty. Hosp.*, 70 Wash.App. 18, 851 P.2d 689, 693 (1993).

### A.

■ Mrs. Luke does not allege or contend that Dr. Fisher was negligent in treating the tick wound, or that his treatment of the tick wound proximately caused her liver failure. In addition, Mrs. Luke failed to establish that a health care provider would have ordered a liver test when treating a patient for a tick bite simply because the patient was on Antabuse. *See* Rev.Code of Wash. § 7.70.040(1). Washington law does not impose a duty to treat unsuspected and unknown problems, particularly when the facts before the doctor do not indicate the possibility that there is a problem. *See Gates v. Jensen*, 92 Wash.2d 246, 595 P.2d 919, 923–24 (1979)

(imposing a duty to investigate only "when other diagnostic procedures are inconclusive for some reason, or when a red flag of warning has been raised by some abnormality"). Other than conclusory statements by Mrs. Luke's experts, there was no evidence that established that, in the course of treating Mrs. Luke for a tick bite, and without Mrs. Luke even experiencing symptoms relating to liver damage, Dr. Fisher would have, or should have ordered liver function tests. Therefore, the district court properly granted summary judgment to Dr. Fisher.

### B.

Luke also alleged that a physician's assistant's failure to order a baseline liver function test, and follow up liver function tests caused her liver failure. In this case, whether Luke can raise a genuine issue of material fact may depend on the admissibility of new evidence contained in Luke's supplemental expert declarations filed with her opposition to the Clinic's motion for summary judgment. The Clinic raised timely objections and filed a motion to strike the supplemental expert declarations under Federal Rule of Civil Procedure 37(c)(1).

On the record before us, we cannot determine whether the district court considered the supplemental expert declarations and, as a consequence, we do not reach the question whether Luke presented a triable issue of fact against the Clinic. We vacate the district court's grant of summary judgment and remand for the district court to decide on the admissibility of the supplemental expert declarations. *See Johnson v. Hawe*, 388 F.3d 676, 686 (9th Cir.2004). The district court may then address anew Luke's motion for summary judgment against the Clinic.

## III.

The district court also granted summary judgment on Luke's claims against the Pharmacy, finding that it did not have a duty to warn Luke about possible side effects. In *McKee v. American Home Products Corp.,* 113 Wash.2d 701, 782 P.2d 1045, 1048–49 (1989), the Washington Supreme Court held that pharmacists do not have a duty to warn consumers of the potential risks of a drug. Washington applies the "learned intermediary" doctrine, which places the duty to warn patients and to monitor drug usage on the physician. *Id.* at 1049–50. Under Washington law, a pharmacist "has a duty to accurately *fill* a prescription and to be alert for clear errors or mistakes in a prescription". *Id.* at 1055 (emphasis in the original). "The pharmacist does not, however, have a duty to question a judgment made by the physician as to the propriety of a prescription or to warn customers of the hazardous side effects associated with a drug, either orally or by way of the manufacturer's package insert." *Id.* at 1055–56. In this case, the district court properly decided that the risk of liver failure was not material and that the physician's assistant had no duty to warn Mrs. Luke of the danger. Under Washington law, it would be contradictory to require a pharmacist to warn of the same danger when the "learned intermediary" had no duty to warn.

Mrs. Luke attempts to avoid the effect of *McKee* by introducing pharmacist opinions concerning the duty of care under a provision in the Washington Administrative Code that requires a pharmacist to "determine the amount of counseling that is reasonable and necessary under the circumstance to promote safe and effective administration of the medication and to facilitate an appropriate therapeutic outcome for that patient from the prescrip-

tion." Wash. Admin. Code § 246–869–220(3) (2007). The regulation specifically states that, "[t]he purpose of this counseling requirement is to educate the public *in the use* of drugs and devices dispensed upon a prescription." Wash. Admin. Code § 246–869–220 (emphasis added). The plain language of the regulation restricts a pharmacist's role to counseling concerning the safe and effective administration of the medication, and does not impose any requirement to explain medical risks. As explained in *McKee,* the pharmacist's duty under the Washington Administrative Code is to provide "nonjudgmental information, not affecting a decision to take or continue using a drug, such as: whether to take the drug on an empty or full stomach, substances to avoid while using the drug, or not to drive or use heavy machinery while taking the drug." *McKee,* 782 P.2d at 1052. The Pharmacy did not violate any cognizable legal duty to Luke. Therefore, we affirm the district court's grant of summary judgment.

Because on this record, we are unable to determine whether the district court ruled on the admissibility of the supplemental expert declarations, the district court's order granting summary judgment to the physician's assistant and the doctors supervising the physician's assistant is **VACATED AND REMANDED** with directions to rule on the Clinic's motion to strike and objections to Luke's late expert declarations and to address anew Luke's motion for summary judgment against the Clinic. In all other respects, the district court's order is **AFFIRMED.** Each party shall bear its own costs.